IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID L. WALLACE,

        **Plaintiff,**

vs.                              **Civil Action 2:16-cv-971**
                                     **Chief Judge Edmund A. Sargus, Jr.**
                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, David L. Wallace, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance benefits and supplemental security income. This matter is before the Chief United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.    BACKGROUND

Plaintiff applied for security disability insurance benefits and supplemental security income in February 2010. An Administrative Law Judge ("ALJ") denied Plaintiff's application on January July 19, 2012. (R. at 109-119.) Plaintiff did not appeal the ALJ's ruling, and it became the final judgment for the period up to July 19, 2012. Plaintiff filed a second application

for disability and supplemental security income on October 9, 2013, asserting disability from insulin-dependent diabetes mellitus, panic disorder without agoraphobia, major depressive disorder, and learning disability. (R. at 262.) Plaintiff's claim was denied initially and upon reconsideration. Upon request, a hearing was held on March 2, 2015, in which Plaintiff, represented by counsel, appeared and testified. (R. at 30-89.) A vocational expert also appeared and testified at the hearing. (R. at 77-88.) On August 20 2015, ALJ Henry Kramzyk issued a decision finding that Plaintiff was not disabled at any time from March 15, 2005, the alleged onset date, through December 31, 2013, the date last insured. (R. at 10-25.) On August 11, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

At the March 2015 administrative hearing, Plaintiff testified that he has lived with his mother and step-father for the last six years, including the relevant time period. (R. at 36-37.) Plaintiff stated that he completed 12th grade, but when asked if he could read and write he replied, "Not that well." (R. at 39.) Asked to clarify, Plaintiff reported that he could read a simple message "[s]ometimes" and that he "was in special ed all my life." (*Id*.) Plaintiff further stated that, although he could not spell very well, he could write a simple message. (*Id*.)

Plaintiff testified that he has panic attacks two or three times weekly. (R. at 61.) Plaintiff stated that he receives treatment from a psychiatrist every four months and receives medication. (R. at 61-62.) Plaintiff also stated that he stopped non-pharmaceutical mental health therapy approximately one year before the hearing. (R. at 62.) Plaintiff further stated that he received no other mental health treatment. (R. at 63.) Plaintiff reported, however, that he attends group

"classes" at the local mental health services organization. (R. at 72.) Plaintiff testified that he has gone to the emergency room because of panic attacks, but he has never been hospitalized overnight for mental health reasons. (R. at 69.) Plaintiff also testified that he has never used illegal drugs or alcohol or abused legal medications. (R. at 70.)

Plaintiff testified that he feeds the family dogs, does dishes and laundry, and bathes and dresses without help. (R. at 65.) Plaintiff also testified that he watches movies and listens to music. (R. at 66.) Plaintiff further testified that he drives, goes grocery shopping, and cuts the grass. (R. at 67.) According to Plaintiff, he gets along well with his family and has non-familial friends. (*Id.*) Plaintiff stated that he does not go to church or belong to any organizations. (R. at 68.) Plaintiff also stated that when he finds himself in a crowd, he leaves. (*Id.*)

**B. Vocational Expert Testimony**

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include fast food worker, cleaner, loader and unloader, fry cook, dish washer, and order picker. (R. at 75-76.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 77-79.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform his past jobs as fast food worker, cleaner, loader, and dishwasher. (R. at 78-79.)

The VE also testified that the hypothetical person could perform other jobs that exist in the local and national economy, including linen room attendant, scrap sorter, and laundry operator. (R. at 79-80.)

## III. MEDICAL RECORDS

### A. Brendan Carroll, M.D.

The 2012 ALJ opinion denying Plaintiff's previous claim for Social Security disability benefits contains a summary of Dr. Carroll's pre-2013 treatment notes. On June 9, 2011, Dr. Carroll conducted an initial psychiatric evaluation and noted slow mentation. (R. at 115-116.) Dr. Carroll reported normal mental status findings including a euthymic mood, appropriate affect, good insight and judgment, normal thought processes, intact memory, and focused attention. (R. at 116.) On October 6, 2011, Dr. Carroll reported that Plaintiff had a depressed mood, but recorded no other abnormal mental status findings. (*Id*.) Dr. Carroll's other findings through February 2012 record anxious mood, but otherwise normal mental status findings. (*Id*.)

Plaintiff provided no treatment records from Dr. Carrol for the period July 20, 2012 through December 31, 2013, the date last insured. On January 2, 2014, Dr. Carroll completed a mental status questionnaire. (R. at 345-347.) Dr. Carroll reported that Plaintiff has a constricted affect, poor memory, and major depression and panic disorder. (R. at 345-346.) Dr. Carroll also reported that Plaintiff is "oriented x 3." (R. at 345.) Dr. Carroll opined that Plaintiff is limited in his ability to remember, understand and follow directions to simple directions. (*Id*.) Dr. Carroll also opined that Plaintiff is limited in his ability to maintain attention to 20 minutes per day, is unable to complete complicated tasks, is limited in social interactions to immediate family, and is unable to adapt. (*Id*.) Dr. Carroll further opined that Plaintiff is unable to react appropriately to the pressures in work settings involved in simple and routine or repetitive tasks. (*Id*.) Dr. Carroll also completed a daily activities questionnaire and reported that Plaintiff needs assistance shopping and driving.

On February 13, 2014, Dr. Carroll saw Plaintiff for medication management and recorded that Plaintiff reported being sad over the loss of two dogs, upset over the denial of Social Security benefits, depressed "some days," and having trouble sleeping "some nights." (R. at 520.) Dr. Carroll found Plaintiff oriented, focused, and coherent, with intact recent and remote memory, good insight and judgment, constricted affect, and depressed mood. (R. at 521.)

On May 29, 2014, Dr. Carroll saw Plaintiff for another medication management appointment and recorded that Plaintiff reported being arrested for theft and jailed for four days. (R. at 507.) Dr. Carroll noted that Plaintiff "was doing ok with mood." (*Id*.) Dr. Carroll found Plaintiff oriented, focused, and coherent, with intact recent and remote memory, good insight and judgment, appropriate affect, and anxious mood. (R. at 507.) Dr. Carroll characterized Plaintiff's progress as "moderate." (R. at 508.)

On July 31, 2014, Dr. Carroll again saw Plaintiff for medication management but made no observations other than referencing his May 29, 2014, notes. (R. at 485.) On September 4, 2014, Dr. Carroll saw Plaintiff for medication management and recorded that Plaintiff reported being frustrated with his life situation. (R. at 470.) Dr. Carroll found Plaintiff oriented, focused, and coherent, with intact recent and remote memory, good insight and judgment, appropriate affect, and euthymic mood. (R. at 471.) Dr. Carroll observed Plaintiff to be "a little paranoid," but characterized his progress as "moderate." (*Id*.)

On November 13, 2014, Dr. Carroll saw Plaintiff once more for medication management and reported that Plaintiff "has improved mood. [H]e is motivated to do some things. [H]e is getting along with others." (R. at 446.) Plaintiff also reported to Dr. Carroll that "he hears a voice inside his head that tells him to steal things, which he is able to resist." (*Id*.) Dr. Carroll found Plaintiff oriented, focused, and coherent, with intact recent and remote memory, good

5

insight and judgment, appropriate affect, and depressed mood. (R. at 446-447.) Dr. Carroll again characterized Plaintiff's progress as "moderate." (*Id.*)

## B. George O. Schulz, Ph.D.

On January 14, 2014, Dr. Schulz evaluated Plaintiff at the request of the state agency. Plaintiff reported to Dr. Schulz that he maintains his medical appointments and usually arrives on time. (R. at 426.) Plaintiff reported a history of anger issues at different places of employment through 2007 and stated that he had good attendance but was "slow" in performing his responsibilities. (R. at 427-428.) Plaintiff also reported that he normally drives himself to his appointments, does his own laundry, prepares his own meals, can make his own purchases and make change, and does the grocery shopping with his aunt. (R. at 429.) Plaintiff further reported that he socialized with friends twice a week, but also reported that people "make me very nervous." (*Id.*)

Dr. Schulz observed that Plaintiff has appropriate hygiene and dress, coherent and well-organized speech, appropriate affect, euthymic mood, and self-reported feelings of depression and anxiety. (R. at 429-430.) According to Plaintiff, without medication he has, on average, one panic attack daily; while medicated, they occur only once or twice weekly. (R. at 430.) Dr. Schulz reported normal short- and long-term memory, borderline ability to abstract, and normal insight, judgment, and orientation. (R. at 430-431.) Dr. Schulz diagnosed Plaintiff with panic disorder and unspecified depressive disorder. (R. at 431.)

Dr. Schulz opined that Plaintiff can manage funds and access basic resources, as well as make his own choices regarding mental health treatment and medical care. (R. at 432.) Dr. Schulz also opined that Plaintiff "is expected to be able to understand and apply instructions in the work setting within the borderline range of intellectual functioning." (*Id.*) Dr. Schulz further

6

opined that Plaintiff is "capable of completing routine or repetitive ADL tasks . . . on a job setting. However, . . . he is likely to experience some objective performance concerns by employers." (*Id.*) Dr. Schulz also opined that Plaintiff is "able to respond appropriately to coworkers and supervisors in a work setting," but is "likely to have some difficulty responding appropriately to work stress." (R. at 433.)

## C. State Agency Review

On January 21, 2014, Roseann Umana, Ph.D., reviewed Plaintiff's record for the state agency pursuant to his application for benefits. (R. at 137-140.) Dr. Umana, noting that Plaintiff was able to work on multiple occasions for a significant time and is able to drive and shop, opined that no evidence supports Dr. Carroll's opined limitations. (R. at 140.) Dr. Umana also opined that Dr. Schulz's opinions are consistent with the evidence of record. (*Id.*) Dr. Umana adopted the previous ALJ's mental residual functional capacity limiting Plaintiff to "simple tasks with no reading or writing, no more than occasional personal contacts, and no production quotas." (R. at 140.)

On April 29, 2014, Carl Tishler, Ph.D., reviewed Plaintiff's records for the state agency and agreed with Dr. Umana's assessment of Dr. Carroll's opined limitations. (R. at 153.) Dr. Tishler gave great weight to Dr. Schulz's opinions because they are consistent with the evidence of record. (*Id.*) Dr. Tishler also adopted the previous ALJ's mental residual functional capacity determination. (R. at 154.)

## IV. THE ADMINISTRATIVE DECISION

On August 20, 2015, the ALJ issued his decision. (R. at 10-25.) Plaintiff met the insured status requirements through December 31, 2013. At step one of the sequential evaluation

7

process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 20, 2012, the day after the prior ALJ decision. (R. at 13.) The ALJ found that from July 20, 2012, through his date last insured of December 31, 2013, Plaintiff had the following severe impairments: major depressive disorder, anxiety, learning disorder, and borderline intellectual functioning. (*Id*.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes or scaffolds; able to understand, remember and carry out short, simple, repetitive instructions; able to sustain attention/concentration for 2-hour periods at a time and for 8 hours in the workday on short, simple, repetitive instructions; can use judgment in making work decisions related to short, simple, repetitive instructions; requires an occupation with only occasional co-worker contact and supervision; requires an occupation with set routine and procedures, and few changes during the workday; requires an occupation with no contact with the public; no fast paced production work; can maintain regular attendance and be punctual within customary

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

tolerances; can perform activities within a schedule; and avoid concentrated exposure to hazards, such as unprotected heights and dangerous machinery.

(R. at 18.) In determining Plaintiff's MRFC, the ALJ gave weight to Dr. Carroll's opinion only with respect to his opined limitation regarding work involving short, simple, repetitive instructions. (R . at 22.) The ALJ gave weight to Dr. Schulz's opinion regarding the opined "limitations to work involving short, simple, repetitive instructions, fast paced production work, and an occupation with set routine and procedures and few changes during the workday, as well as the abilities to maintain regular attendance and be punctual within customary tolerances, and to perform activities within a schedule." (R. at 23.) The ALJ also determined, however, that Plaintiff has additional limitations regarding coworker contact and supervision, public contact, and set routines not specified by Dr. Schulz. (*Id*.) The ALJ gave significant partial weight to the state agency consultants, but gave little weight to their opined limitation regarding reading and writing because Plaintiff testified that he could read and write simple messages and because evidence in the record suggests he could read and write during group therapy. (*Id*.)

The ALJ also determined that Plaintiff's allegations regarding his symptoms and limitations are partially credible. The ALJ noted that Plaintiff consistently reports symptoms of depression, but concluded that "the objective medical evidence does not fully substantiate the intensity, persistence, and functional limitations alleged." (R. at 21.) The ALJ also noted that Plaintiff did not seek counseling during the entire relevant period. (*Id*.) The ALJ further noted that although Plaintiff provided "very little evidence of treatment prior to January 2014," the evidence he did provide from 2014 "shows improvement . . . with medication and counseling." (R. at 22.)

The ALJ concluded that, through the date last insured, Plaintiff was unable to perform any past relevant work. (R. at 24.) Relying on the VE's testimony, the ALJ determined that Plaintiff could have performed at least three jobs that exist in the local and national economy: linen room attendant, scrap sorter, and laundry operator. (R. at 25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.*)

## VI. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forward two assignments of error. Plaintiff first contends that the ALJ failed to properly evaluate Dr. Carroll's treating physician opinion. (ECF No. 10 at 10.) Second, Plaintiff argues that the ALJ failed to account for all of Plaintiff's concentration, persistence and pace limitations in formulating his RFC. (*Id*. at 5.)

**A. Res Judicata Effect**

At the outset, the time frames within which Plaintiff must establish his disability should be noted. Plaintiff's previous application for benefits was denied on July 19, 2012, and Plaintiff did not appeal. Thus, as the Commissioner correctly observes, the previous denial must be given a *res judicata* effect by this Court. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232 (6th Cir. 1993). The practical consequence of this determination is that the ALJ, and this Court upon review, can only consider evidence in the record after July 19, 2012.

The Commissioner is bound by prior ALJ findings with regard to a claimant's disability application unless new evidence or changed circumstances require a different finding. AR 98–4(6), 1998 WL 283902, at *2–3. Social Security Acquiescence Ruling 98–4(6) mandates that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt

> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law, regulations or rulings affecting the
> finding or the method for arriving at the finding.

*Id.* at *3.

It is the claimant's burden to present evidence showing that his symptoms have changed since the time of the ALJ's prior determination. *Casey*, 987 F.2d at 1232–33. The Sixth Circuit has held that "when a plaintiff previously has been adjudicated not disabled, [he or] she must show that [his or] her condition so worsened in comparison to [his or] her earlier condition that [he or] she was unable to perform substantial gainful activity." *Id.* at 1232; *see McCracken v. Comm'r of Soc. Sec.*, No. 1:08–CV–327, 2009 WL 2983049, at *10 (S.D. Ohio Sept. 14, 2009) ("new and material evidence must document a *significant* change in the claimant's condition") (emphasis in original).

While July 20, 2012 is the earliest date from which Plaintiff can receive benefits, he must demonstrate his disability began no later than December 31, 2013. Plaintiff seeks Disability Insurance Benefits under 42 U.S.C. § 423, which requires that an applicant establish that he or she became disabled while insured under § 423(c)(1). A "period of disability can commence only while an applicant is fully insured." 42 U.S.C. § 416(i)(2)(c). To be entitled to Disability Insurance Benefits, Plaintiff has to establish that he was disabled prior to his date last insured ("DLI"), which was December 31, 2013. *See* 20 C.F.R. §§ 404.315(a)(1), 404.320(b)(2); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (claimant must show that he became disabled on or before his date last insured). Accordingly, Plaintiff must establish that he became disabled during the period between July 20, 2012 and December 31, 2013.

## B. Dr. Carroll's Treating Source Opinion

Plaintiff contends that the ALJ failed to properly evaluate Dr. Carroll's treating physician opinion. (*Id*. at 10.) Specifically, Plaintiff argues that the ALJ erred in declining to give Dr. Carroll's opinion controlling weight; failed to apply the appropriate factors as required by the regulations; and failed to give good reasons for giving Dr. Carroll's opinion only partial weight. (*Id*. at 11-13.) Plaintiff further argues that substantial evidence does not support the ALJ's decision not to include Dr. Carroll's opined concentration, persistence, and pace limitations in his RFC. (*Id*. at 5.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)

(indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

In his opinion, the ALJ listed several *Wilson* factors that influenced his decision not to give Dr. Carroll's treating source opinion controlling weight. The ALJ noted the infrequency of examination and treatment during the relevant period, including the complete lack of treatment notes from the only treatment during 2013. (R. at 22.) The ALJ also noted that Dr. Carroll's opinion is not supported by other evidence in the record and that Dr. Carroll's own treatment notes conflict with his opined limitations. (*Id.*) The ALJ further noted that Dr. Carroll made factual misstatements about Plaintiff's actual living conditions that may have led him to make conclusions otherwise unwarranted by the record. (*Id.*)

In determining what weight to give Dr. Carroll's opinion evidence, the ALJ noted that "Dr. Carroll's opinion seems reliant on the claimant's subjective reports, as it does not seem consistent with the infrequent treatment in 2013, the findings on consultative examination, or with Dr. Carroll's good, mild or moderate findings at the claimant's psychiatry appointments in 2011 and 2014." (R. at 22.)

The ALJ's conclusions are supported by substantial evidence. A review of the record confirms a complete lack of mental health treatment notes from 2013. In fact, Plaintiff has

provided no evidence that he even sought mental health treatment—other than the lone, undocumented August 2013 appointment—during the relevant period. Furthermore, Dr. Carroll's notes from 2014, even were they applicable to the relevant period, do not support his opined limitations. At each of the five brief encounters with Plaintiff in 2014, Dr. Carroll found Plaintiff oriented, focused, and coherent, with intact recent and remote memory and good insight and judgment. (R. at 446-447, 471, 485, 507, & 521.) On three of those occasions, Dr. Carroll found that Plaintiff had an appropriate affect. ( R. at 447, 471, & 507.) On one occasion, Dr. Carroll found Plaintiff to have an euthymic mood. (R. at 471.) Again, even if they were applicable to the relevant period, Dr. Carroll's pre-2013 treatment notes indicate almost entirely normal mental status findings, including euthymic mood. (R. at 115-116.) Plaintiff himself reports being able to read and write simple messages, drive, go grocery shopping, and maintain non-familial friendships. (R. at 67.) Plaintiff reported to Dr. Schulz that he drives himself to his appointments, can do his own shopping and make change, and socializes with friends twice a week. (R. at 429.) Despite these records, and the lengthy gap in treatment between 2012 and 2014, Dr. Carroll opined that Plaintiff has a poor memory, is limited in social interactions to immediate family, and needs help driving and shopping. (R. at 345.)

The Undersigned is mindful that the ALJ, in determining whether to give a treating source opinion controlling weight, is not required to discuss each of the *Wilson* factors explicitly, so long as it is clear from the opinion that he considered them appropriately. *Tilley*, 394 F. App'x at 222. In light of the large gap in Plaintiff's mental health treatment and the inconsistencies between Dr. Carroll's opined limitations and the factual record, the Undersigned finds that the ALJ appropriately considered the *Wilson* factors and that substantial evidence supports his decision not to give Dr. Carroll's treating source opinion controlling weight.

16

Further, the same substantial evidence supports the ALJ's reasons for crediting and giving limited weight to Dr. Carroll's opinion, including his opinions as to Plaintiff's concentration, persistence, and pace limitations.

**C. Dr. Schulz's Concentration, Persistence, and Pace Medical Opinion Evidence**

Likewise, the Undersigned finds that the ALJ properly considered Dr. Schulz's opined limitations regarding concentration, persistence, and pace. The ALJ fully incorporated Dr. Schulz's opined limitations with respect to "limitations to work involving short, simple, repetitive instructions, fast paced production work, and an occupation with set routine and procedures and few changes during the workday, as well as the abilities to maintain regular attendance and be punctual within customary tolerances, and to perform activities within a schedule." (R. at 23.) The ALJ also applied additional limitations regarding coworker contact and supervision, public contact, and set routines not specified by Dr. Schulz. (*Id.*) Plaintiff appears to argue that the ALJ should have incorporated even more limitations to address Dr. Schulz's opinion that Plaintiff would have "some" objective performance concerns from employers. (R. at 432.) The Undersigned finds the ALJ's RFC incorporates this portion of Dr. Schulz's opinion by placing limitations on Plaintiff's ability to perform fast paced production work and by limiting him to short, simple, repetitive instructions, as well as a largely static work environment. (R. at 23.) Further, the ALJ cannot be expected to do more when presented with vague statements forecasting, but not defining, "some" objective performance concerns.

Last, to the extent that Plaintiff contends the ALJ's "limitations for 'short, simple, repetitive *instructions*'" fail to limit Plaintiff to simple, repetitive *tasks*, his argument is not well taken. (ECF No. 10 at 9 (emphasis in original).) It is clear from the ALJ's opinion that he limits Plaintiff to "unskilled work" similar to the "simple tasks" prescribed in Plaintiff's first denial for

17

benefits. (R. at 25, 114, 118-119.) The Undersigned finds that substantial evidence in the record supports this determination and the ALJ's decision not to incorporate in the RFC greater concentration, persistence, and pace limitations.

## VII. CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, the Undersigned **RECOMMENDS** that the Commissioner of Social Security's decision be **AFFIRMED** and Plaintiff's Statement of Errors be **OVERRULED**.

## IX. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: February 5, 2018                     /s/ *Elizabeth A. Preston Deavers*
                                        ELIZABETH A. PRESTON DEAVERS
                                        UNITED STATES MAGISTRATE JUDGE